Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 92 C 1982 | **DATE** | 10/17/2001 |
| **CASE TITLE** | Memisovski, et al. vs. Patla, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [143] is denied. Defendants are directed to answer plaintiffs' third amended complaint on or before 11/7/01. Status hearing and scheduling conference is set for 11/29/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 18 2001 | |
| | Notified counsel by telephone. | | date docketed | 169 |
| | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 10/17/2001 | |
| MD | courtroom deputy's initials | 01 OCT 17 PM 4:18 | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERIM & ADVIJE MEMISOVSKI, <br> by their mother THERESA MEMISOVSKI; <br> LORETTA STURDIVANT; MICHAEL <br> SAMPSON by his mother MICHELLE <br> SAMPSON; and JOSEPH and ADAM HASSAN <br> by their mother MICHELLE HASSAN; <br> all on behalf of themselves and all others <br> similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ANN PATLA, Director of the Illinois <br> Department of Public Aid; and LINDA RENEE <br> BAKER, Secretary of the Illinois Department <br> of Human Services, <br><br> Defendants. | No. 92 C 1982 <br><br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, women and children who are eligible for Medicaid[1] benefits, bring their third amended class action complaint on behalf of themselves and other similarly situated individuals against defendants pursuant to 42 U.S.C. § 1983. The complaint alleges that defendants violated the federal Medicaid Act, 42 U.S.C. § 1396 *et seq.*,

> . . . by failing to ensure: (1) that all plaintiffs, both women and children in Cook County who are enrolled in Medicaid, have access to obstetrical and pediatric care and services at least to the extent that such care and services are available to the general population; and (2) that child plaintiffs, children in Cook County who are enrolled in Medicaid, are provided Early and Periodic Screening, Diagnostic, and Treatment services.

---

[1] "Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990)

1/01

(Compl. ¶ 1.) Presently, defendants move to dismiss, primarily arguing that the Eleventh Amendment bars relief under plaintiffs' complaint. For the reasons articulated below, the court denies defendants' motion.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 101, 102 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## BACKGROUND

Briefly, the pertinent allegations of the third amended complaint, which are taken as true for purposes of this motion, are as follows: All named plaintiffs live in Chicago, Illinois, in the County of Cook. Plaintiff Loretta Sturdivant, a high risk pregnant patient, repeatedly but unsuccessfully in 1991 and 1992 (approximately for the first six months of her pregnancy) attempted to find a prenatal and obstetrical care provider that accepted her Medicaid benefits. Ms. Sturdivant, therefore, did not have access to obstetrical care to the same extent that such services are available to the general population. Moreover, the Illinois Department of Aid (the

"IDPA") failed to adequately assist her in locating a doctor who would accept Medicaid as reimbursement. Plaintiff Michael Sampson, a six year old Medicaid recipient since 1993 who suffers from numerous physical ailments, cannot locate a pediatrician in Chicago who will accept his Medicaid benefits, and, as such, does not have access to pediatric care to the same extent that such services are available to the general population. The IDPA has also failed to assist Michael's mother in locating a doctor for Michael who will accept Medicaid as reimbursement, and has failed to ensure that Michael receives all medically necessary screening examinations and immunizations. Joseph and Adam Hassan, ages ten and eight, are also Medicaid recipients. Their mother, Michelle Hassan, receives Aid to Families with Dependent Children (now called Temporary Assistance to Needy Families) benefits for herself and Adam and additionally receives Supplemental Security Income ("SSI") benefits from the Social Security Administration for Joseph because he is disabled. Joseph became ineligible for the psychiatric treatment he had previously received at an HMO in 1994 when he began to receive SSI benefits because the IDPA's contracts with its participating HMOs exclude coverage of children who receive SSI childhood disability benefits and are enrolled in Medicaid. Ms. Hassan cannot locate another psychiatrist who will accept her Medicaid card to treat Joseph, nor has she been able to locate a pediatrician to treat either Joseph or Adam since Joseph became ineligible to be a HMO member. Hence, like the other named plaintiffs, Joseph and Adam do not have access to medical care to the same extent that such services are available to the general population, and the IDPA has failed to adequately assist their mother in locating a doctor for her children who will accept Medicaid as reimbursement. These plaintiffs all have been or continue to be at risk medically due to their inability to find medical care providers who will accept Medicaid.

On October 8, 1992, Judge Zagel, the district court judge previously assigned to this case,[2] certified two plaintiff classes. Loretta Sturdivant is the named class representative of Class A, which is defined as "[a]ll women in Cook County, Illinois who, on or after July 1, 1990: (a) have been, are, or will be eligible for . . . Medicaid . . .; and (b) have been, are, or will be pregnant and therefore have required, do require, or will require obstetrical services from a licensed medical provider." (Compl. ¶ 4.) Michael Sampson and Joseph and Adam Hassan are among the named class representatives for Class B, which is defined as "[a]ll children (persons under the age of 18) in Cook County, Illinois who, on or after July 1, 1990 have been, are, or will be eligible for . . . medicaid." (*Id.*) Defendant Patla, the IDPA's Director, administers the Medicaid program in Illinois and her duties include adopting and implementing policies, rules, and regulations for the IDPA that conform with applicable federal laws and regulations. Defendant Baker is the Secretary of the Illinois Department of Human Services (the "IDHS") and her duties include implementing policies, rules, and regulations for the IDHS in administering the Medicaid program that conform to applicable federal law and regulations. The IDHS is the "successor agency" to the IDPA for purposes of administrative functions relevant to the programs at issue in this case and the IDPA's powers, duties, and functions were transferred to the IDHS on July 1, 1997.[3]

---

[2]This case was reassigned to this court, via an executive order, on September 5, 2000 from the Honorable William J. Hibbler, who presided over the case as a result of a reassignment from Judge Zagel on July 2, 1999.

[3]*See* 20 ILCS § 1305/80-10(d) & 80-15(b). The court rejects defendants' unsupported argument that Baker should be dismissed from this action because the IDHS did not exist at the time that plaintiff Sturdivant alleges her rights were violated. Federal Rule of Civil Procedure 25(d)(1) provides that an "officer's successor is automatically substituted as a party" "[w]hen a public officer is a party to any action in his official capacity and . . . ceases to hold office." When part of the IDPA Director's duties were assigned to the new office of Director of IDHS, Baker became the successor to the IDPA's director.

4

Plaintiffs request that this court enter declaratory relief stating that defendants' policies and practices violate the class members' rights under the Medicaid Act and its implementing regulations and enjoin defendants from maintaining customs and practices declared to violate the Medicaid Act or implementing regulations. Specifically, plaintiffs claim the their rights have been and continue to be violated under the following provisions of the Medicaid Act and implementing regulations: (1) 42 U.S.C. § 1396a(3)(A) and 42 C.F.R. § 447.204 for the Class A plaintiffs, (2) 42 U.S.C. § 1396a(a)(30)(A) and 42 C.F.R. § 447.204 for the Class B plaintiffs, and 42 U.S.C. I 1396a(a)(43) and 1396d(r) and 42 C.F.R. §§ 441.50-62 for the Class B plaintiffs.

## DISCUSSION

Although the Eleventh Amendment generally bars "suits brought by private parties against a state," "suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the *Ex parte Young* doctrine." *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir 1997) (*citing Ex parte Young*, 209 U.S. 123, 159-60 (1908)). Defendants first argue that all plaintiffs' claims under § 1396a(a)(30)(A) are barred by the Eleventh Amendment and not excepted by the *Ex parte Young* doctrine because these claims "seek relief that is compensatory, in the form of restitution, damages, or as a direct future payment from the state treasury." (Def.'s Mem. in Supp. at 8.) Defendants, however, grossly mischaracterize plaintiffs' complaint.

Section 1396a(a)(30)(A) mandates that a state plan for medical assistance must

> ... provide for such method and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against the unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available

5

> under the plan at least to the extent that such care and services are available to the
> general population in the geographic area . . . .

Although no such request appears in plaintiffs' complaint, defendants maintain that plaintiffs are seeking "retroactive rate adjustments for providers, future rate increases for providers, or . . . compensatory damages for recipients who failed to receive services in the past . . . or who will in the future fail to receive services because of a dearth of providers enrolled in the Illinois medical assistance program due to inadequate reimbursement rates pursuant to section 1396a(a)(30)." Defendants believe that despite the absence of a request for money damages, the equitable relief requested amounts to a money judgment and is, therefore, barred by the Eleventh Amendment.

As plaintiffs point out, the Seventh Circuit held in *Marie O.*, a "suit alleging that the State of Illinois was not complying with the Individuals with Disabilities Education Act ('IDEA')," seeking "declaratory and injunctive relief to achieve recognition of their rights under IDEA and to require the Governor and State Superintendent of Education of Illinois to bring Illinois into compliance with the IDEA," was not barred by the Eleventh Amendment and affirmed the district court's decision in that case. 131 F.3d at 611. Although the Seventh Circuit's analysis focused on whether the *Ex parte Young* doctrine applied based on the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 609 (1996), an issue not raised here, the *Marie O.* court expressly noted the district court's conclusion that "the fact that Illinois possibly would have to spend considerable funds to comply with . . . [IDEA's requirements] did not remove the action from the strictures of the *Ex parte Young* doctrine." 131 F.3d at 614. Moreover, the Seventh Circuit tellingly stated, "At the outset, we note that the type of action brought by the plaintiffs is squarely within the traditional bounds of the *Ex parte Young* doctrine

6

as reaffirmed in *Seminole Tribe*. The plaintiffs brought an action against two state officials seeking prospective equitable relief for ongoing violations of federal law." 131 F.3d at 616 (footnote omitted). The relief sought here is essentially no different from the relief sought in *Marie O*. Defendants' argument that, in actuality, plaintiffs are seeking compensatory relief for past violations simply because the complaint's allegations state that violations occurred since 1990 is unpersuasive because plaintiffs do not seek reimbursement or other compensation. Plaintiffs ask this court to declare that the "defendants' policies and practices . . . have violated and are violating the rights of plaintiff class members," and to enjoin "defendants from maintaining customs and practices declared to violate the Medicaid Act or implementing regulations," which can only be sensibly characterized as prospective injunctive relief.

Nor is the relief sought here different from that allowed in the recently decided case of *Boudreau v. Ryan*, No. 00 C 5392, 2001 WL 840583 (N.D. Ill. May 2, 2001), a case that, in this court's view, correctly reads *Edelman v. Jordan*, 415 U.S. 651 (1974), as undermining rather than supporting defendants' position. In *Boudreau*, the plaintiffs, developmentally disabled and/or mentally retarded adults, brought suit against the same defendants as are named in this case[4] pursuant to 42 U.S.C. § 1983 alleging that defendants' practices violate their rights under, among other federal statutes, the Medicaid Act. The *Boudreau* court expressly addressed and rejected the same argument defendants make here and found that the relief sought was not barred by the Eleventh Amendment. In doing so, the court relied on *Edelman*, noting that the Supreme Court in *Edelman* "surveyed other Supreme Court cases, noting in particular that requests for

---

[4] The plaintiffs also named as defendants George Ryan, Governor of Illinois, and Melissa Wright, Associate Director of the Office of Developmental Disabilities.

7

prospective relief often have a substantial impact on state treasuries." 2001 WL at *3. As explained in *Boudreau*,

> The *Edelman* Court articulated the distinction between these permissible claims for relief and the impermissible claims for retroactive equitable relief as follows:
>
>> [T]he fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*.
>
> [*Edelman*, 415 U.S.] at 667-668. *See also Milliken* [v. *Bradley*, 433 U.S. 267,] 289 [(1977)] (stating that *Ex parte Young* "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact of the state treasury")

*Id.* at *3-4 (first alteration in the original). Defendants' attempt to distinguish *Boudreau* because the case did not involve the same Medicaid Act sections as those at issue here is a distinction of no consequence, and the court, as explained above, rejects defendants' other attempt to distinguish the case based on that the fact that the alleged deprivation of rights occurred in the past. Again, that defendants' practices violated plaintiffs' rights under the Medicaid Act in the past does not alter the fact that plaintiffs are only seeking prospective injunctive relief – namely, that defendants stop maintaining customs and practices that have been declared to violate plaintiffs' rights. The relief challenged and found violative of the Eleventh Amendment in *Edelman*, by contrast, was to "enjoin[] the defendants to award to the entire class of plaintiffs[, individuals entitled to benefits under Aid to the Aged, Blind, or Disabled (AABD) programs,] all AABD benefits wrongfully withheld." *Edelman*, 415 U.S. at 655. This relief required "payment

8

of state funds, not as a necessary consequence of compliance in the future with substantive federal-question determination, but as a form of compensation to those whose" rights were found to be violated." *Id.* at 668.[5] There is simply no corresponding request for relief in plaintiffs' complaint.

Defendants also argue that plaintiffs' §§ 1396a(a)(43) and 1396d(r) claims are barred by the Eleventh Amendment. These sections require that a state Medicaid plan inform eligible recipients under 21 years of age of the availability of, and provide for, early and periodic screening, diagnostic, and treatment services, known as "EPSDT services."[6] Again, defendants

---

[5]Indeed, the *Edelman* Court makes clear the distinction between the relief requested in this case, which is permissible, and that found to be barred by the Eleventh Amendment. The Court noted that the state officials defendants in *Edelman* had argued to the Seventh Circuit in that case, *inter alia*, "that the Eleventh Amendment *barred award of retroactive benefits*, [and] that the judgment of inconsistency between the federal regulations and the provisions of the Illinois Categorical Assistance Manual *could be given prospective effect only.*" 415 U.S. at 657-58 (emphasis added). Moreover, the Court stated the Seventh Circuit's holding as follows:

> The Court of Appeals in this case, while recognizing that the *Hans* line of cases permitted the State to raise the Eleventh Amendment as a defense to suit by its own citizens, nevertheless concluded that the Amendment did not bar *the award of retroactive payments of the statutory benefits found to have been wrongfully withheld.* The Court of Appeals held that the above-cited cases, when read in the light of this Court's landmark decision in Ex parte Young . . . do not preclude *the grant of such a monetary award in the nature of equitable restitution.*

*Id.* at 663-64 (emphasis added). The Court then concluded, "Because we believe the Court of Appeals erred in its disposition of the Eleventh Amendment claim, we reverse that portion of the Court of Appeals decision which affirmed the District Court's order *that retroactive benefits be paid by the Illinois state officials.*"

*Id.* at 658-59 (emphasis added).

[6]Section 1396a(a)(43) requires a state plan to provide for

(A) informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,
(B) providing or arranging for the provision of such screening services in all cases where they are requested,
(C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services, and

(continued...)

9

⁶(...continued)
(D) reporting to the Secretary (in a uniform form and manner established by the Secretary, by age group and by basis of eligibility for medical assistance, and by not later than April 1 after the end of each fiscal year, beginning with fiscal year 1990) the following information relating to early and periodic screening, diagnostic, and treatment services provided under the plan during each fiscal year:
    (i) the number of children provided child health screening services,
    (ii) the number of children referred for corrective treatment (the need for which is disclosed by such child health screening services),
    (iii) the number of children receiving dental services, and
    (iv) the State's results in attaining the participation goals set for the State under section 1396d(r) of this title.

Section 1396d(r) states that

> The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:
> (1) Screening services--
> (A) which are provided--
> (i) at intervals which meet reasonable standards of medical and dental practice, as determined by the State after consultation with recognized medical and dental organizations involved in child health care and, with respect to immunizations under subparagraph (B)(iii), in accordance with the schedule referred to in section 1396s(c)(2)(B)(i) of this title for pediatric vaccines, and
> (ii) at such other intervals, indicated as medically necessary, to determine the existence of certain physical or mental illnesses or conditions; and
> (B) which shall at a minimum include--
> (i) a comprehensive health and developmental history (including assessment of both physical and mental health development),
> (ii) a comprehensive unclothed physical exam,
> (iii) appropriate immunizations (according to the schedule referred to in section 1396s(c)(2)(B)(i) of this title for pediatric vaccines) according to age and health history,
> (iv) laboratory tests (including lead blood level assessment appropriate for age and risk factors), and
> (v) health education (including anticipatory guidance).
> (2) Vision services--
> (A) which are provided--
> (i) at intervals which meet reasonable standards of medical practice, as determined by the State after consultation with recognized medical organizations involved in child health care, and
> (ii) at such other intervals, indicated as medically necessary, to determine the existence of a suspected illness or condition; and
> (B) which shall at a minimum include diagnosis and treatment for defects in vision, including eyeglasses.
> (3) Dental services--
> (A) which are provided--
> (i) at intervals which meet reasonable standards of dental practice, as determined by the State after consultation with recognized dental organizations involved in child health care, and
> (ii) at such other intervals, indicated as medically necessary, to determine the existence of a suspected illness or condition; and
> (B) which shall at a minimum include relief of pain and infections, restoration of teeth, and maintenance of dental health.
> (4) Hearing services--

(continued...)

attempt to misstate plaintiffs' request for relief as compensatory rather than prospective by claiming that the only appropriate remedy for violations of these sections is "compensatory damages from the state." (Defs.' Mem. in Supp. at 13.) But plaintiffs have chosen, assumably so that they will fall within the *Ex parte Young* exception, to seek only prospective injunctive relief for such violations, notwithstanding defendants' belief that this type of relief will not appropriately remedy violations of plaintiffs' rights under these sections. For the reasons stated above, therefore, the Eleventh Amendment also fails to bar plaintiffs' claims for relief for violations of these sections.

Finally, defendants assert an additional argument with regard to the receipt of EPSDT services. Defendants claim that the relevant statutory sections do "not confer any substantive

---

[6](...continued)
   (A) which are provided--
     (i) at intervals which meet reasonable standards of medical practice, as determined by the State after consultation with recognized medical organizations involved in child health care, and
     (ii) at such other intervals, indicated as medically necessary, to determine the existence of a suspected illness or condition; and
   (B) which shall at a minimum include diagnosis and treatment for defects in hearing, including hearing aids.
   (5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

Nothing in this subchapter shall be construed as limiting providers of early and periodic screening, diagnostic, and treatment services to providers who are qualified to provide all of the items and services described in the previous sentence or as preventing a provider that is qualified under the plan to furnish one or more (but not all) of such items or services from being qualified to provide such items and services as part of early and periodic screening, diagnostic, and treatment services. The Secretary shall, not later than July 1, 1990, and every 12 months thereafter, develop and set annual participation goals for each State for participation of individuals who are covered under the State plan under this subchapter in early and periodic screening, diagnostic, and treatment services.

right to ensure that EPSDT services are provided to children eligible for medical assistance."
(Defs.' Mem. in Supp at 13.) Redress through § 1983 requires "the violation of a federal *right*, not merely the violation of federal *law*." *Blessing* v. *Freestone*, 520 U.S. 329, 340 (1997). In *Blessing*, the Supreme Court stated the traditional three-factor test used to determine "whether a particular statutory provision gives rise to a federal right" as follows:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id.* at 340-41 (citations omitted).[7] "First, it is well settled that Medicaid-eligible children under the age of twenty-one, such as the [Class B] plaintiffs, are the intended beneficiaries of the EPSDT provisions." *Danjour B.* v. *New York*, No. 00 CIV.2044(JGK), 2001 WL 830674, at *8 (S.D.N.Y. July 23, 2001) (citing *Miller* v. *Whitburn*, 10 F.3d 1315, 1319 (7th Cir. 1993); *Frew* v. *Gilbert*, 109 F. Supp. 2d 579, 662 (E.D. Tex. 2000); *Salazar* v. *District of Columbia*, 954 F. Supp. 278, 324 n.92 (D.D.C. 1996); *Wellington* v. *District of Columbia*, 851 F. Supp. 1, 6 (D.D.C. 1994); *New York Coalition to End Lead Poisoning* v. *Giulliani*, 720 N.Y.S.2d 298, 301 (N.Y. Sup. Ct. 2000)). Moreover, as likewise determined in the above-cited cases, the language of the relevant provisions clearly satisfies the second and third *Blessing* factors. *See* footnote 6, *supra*; *see also Dajour B.*, 2001 WL 830674, at *9-10; *Frew*, 109 F. Supp. 2d at 662-63; *New York Coalition to End Lead Poisoning*, 720 N.Y.S.2d at 302-303. Defendants have provided no

---

[7]The court notes that defendants fail to make any argument as to why the above three-factor test is not satisfied by the EPSDT provisions.

reason why this court should reject the analysis set forth in these cases, which hold that violations of the statutory provisions requiring EPSDT services are redressable through § 1983. Indeed, defendants fail to mention the three-factor test at all in their moving papers, and this court was unable to locate any cases finding that the EPSDT provisions did not satisfy all elements of the three-part inquiry.[8]

## CONCLUSION

For the above-stated reasons, the court denies defendants' motion to dismiss [#143]. Defendants are directed to answer plaintiffs' third amended complaint on or before November 7, 2001, and a scheduling conference will be held in this matter on November 29, 2001 at 9:30 a.m.

Date: October 17, 2001

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[8] The court rejects defendants argument that Illinois' special sovereignty interests are involved in this case so that *Ex parte Young* does not apply. As the *Boudreau* court explained when rejecting a variation of defendants' argument in that case, this action is no different from many cases where courts have found that special state sovereignty interests were not implicated. *See* 2001 WL 840583, at *4 (collecting cases). As likewise determined in *Boudreau*, the court also rejects the analysis set forth in *Westside Mothers v. Haveman*, 133 F. Supp. 2d 549 (E.D. Mich 2001), cited as additional support, as unpersuasive and inconsistent with other settled law. *See Boudreau*, 2001 WL 840583, at *5.