# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| MEMISOVSKI, et al., | ) |
| --- | --- |
| Plaintiffs, | ) |
| | ) No. 92 C 1982 |
| vs. | ) |
| | ) Judge Joan H. Lefkow |
| MARAM, et al., | ) |
| Defendants. | ) |

## MEMORANDUM DECISION

On August 23, 2004, this court entered a memorandum opinion and order finding that the defendants, including the Illinois Department of Healthcare and Family Services ("HFS") (collectively, "defendants" or "the State"), were in violation of their obligations under the federal Medicaid Act. This finding was based in part on the State's ongoing failure to ensure that the plaintiffs (a class of children in Cook County eligible for Medicaid coverage) were provided pediatric care and services to the extent that such care and services were available to the general population. Dkt. No. 390. The court assumes the reader's familiarity with that very lengthy opinion for the purposes of this order and will not attempt to summarize it here. After that finding of defendants' liability, the parties elected to negotiate a consent decree to determine an appropriate remedy. The court approved and entered the parties' proposed decree on November 18, 2005. Dkt. No. 422. Unfortunately, the parties have now come to a disagreement regarding the implementation of the decree and are before the court on plaintiffs' motion to enforce it. Dkt. No. 440. For the reasons that follow, plaintiffs' motion [# 440] is granted.

The most relevant portion of the consent decree is paragraph 25:

> HFS will commission by May 15, 2006, to be completed without undue delay, a study regarding access to specialist services by class member and non-class member children. HFS, in consultation with plaintiffs, will retain a qualified contracting expert for this role, subject to plaintiffs' reasonable approval of the expert. The parties will discuss with the expert their views on methodology for the study. The expert shall decide on an appropriate methodology.

Consent Decree, Dkt. No. 422, at ¶ 25. Plaintiffs argue that defendants have violated this mandate of the consent decree in at least three ways. First and foremost, they allege that the expert that defendants retained to conduct the study, Health Systems of Illinois ("HSI"), is not qualified. Second, plaintiffs argue that HSI has effectively been replaced by a new expert, Infosurv, that was retained without their approval.[1] Third, plaintiffs argue that by now, there has been undue delay in the completion of the study. Defendants contest each of these points and also argue that according to the consent decree, they are not matters for the court to decide.

Courts treat consent decrees like contracts for purposes of interpretation and enforcement. *United States* v. *Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002); *Autotech Tech. Ltd. P'Ship* v. *Automationdirect.com, Inc.*, 2006 WL 1304949 (N.D. Ill. May 10, 2006) (citing, *inter alia*, *United States* v. *Armour & Co.*, 402 U.S. 673, 682, 91 S. Ct. 1752, 29 L. Ed. 2d 256 (1971)) ("As with all contracts, the ultimate question is what was the parties' mutual intent. The answer to that question is to be found 'within the consent order's four corners, and not by reference to what might satisfy the purposes of one of the parties to it.'"). This consent decree provides that the court retains jurisdiction "for all purposes, including to enforce, modify, or dissolve [the] Decree." Consent Decree, at ¶ 41. Therefore, the court has the power and the obligation to enforce the requirements of the consent decree.

---

[1] Although plaintiffs did not rely on this point at oral argument, it was fully briefed in the parties' papers and remains before the court.

The first task, of course, is to resolve the dispute as to what the consent decree means. To resolve the dispute, the court must refer not only to paragraph 25, cited above, but also to the consent decree's paragraphs four and five, which require defendants to comply with the Medicaid Act by providing plaintiffs with equal access to pediatric care and services. *See John B.* v. *Menke*, 176 F. Supp. 2d 786, 800 (M.D. Tenn. 2001) (where the consent decree incorporated the Medicaid Act, "the court [was] bound to look to the law that serves as the foundation for the four corners of the consent decree."). Those requirements include the efficient completion of a study that can effectively promote the state's compliance with the Medicaid Act.

The plaintiffs first argue that HSI is not a qualified expert to undertake the study. Although they gave their approval to the hiring of HSI, plaintiffs now believe that they were provided with false information regarding HSI's qualifications. Specifically, plaintiffs' counsel represents that plaintiffs were told that HSI had "expertise in designing and conducting similar studies," but the HSI personnel working on the study later admitted that they had never before conducted either a mail survey or an audit survey (the two main contenders for the methodology to be used here). Plaintiffs conclude from this that they should not be bound by their approval approval of HSI. Therefore, they argue, the consent decree has been violated because they never gave reasonable approval to the retention of HSI. As an independent matter, they cite the admissions of the HSI employees regarding their lack of experience as evidence that HSI is not qualified, which leads to the conclusion that defendants also violated the decree by proposing an unqualified expert.

In response to this point, defendants argue that nothing in the consent decree allows plaintiffs to withdraw their approval of HSI and that plaintiffs must be bound by that approval. They say that plaintiffs have sophisticated lawyers who cannot be heard to argue that they did not do sufficient investigation and that if plaintiffs' lawyers really did have doubts about HSI's qualifications at the time, they should not (and would not) have approved HSI in the first place. Defendants do not dispute, however, that the statements described above about HSI's expertise were made or that the HSI employees in fact have never conducted a mail or audit survey.[2] Their substantive comment on HSI's qualifications is that "HSI is a federally-qualified health care quality improvement organization that is part of a multi-state operation with more than 20 years of experience in health care quality issues, having designed and administered health care focused quality studies and special projects." Defendants' response, at 10. Defendants also argue that the qualification of the expert is not a matter for the court to decide because the consent decree left it up to the agreement of the parties.

As further evidence that HSI is not a qualified expert, plaintiffs argue that HSI proposed a survey method that is inappropriate and that the survey itself is poorly designed. Some relevant background is necessary before addressing the parties' arguments on this point.

In discussions with defendants and HSI about possible survey methodologies, plaintiffs advocated for an "audit survey," in which testers call doctors' offices pretending to be patients

---

[2] The court has been provided with no documentation supporting (or refuting) these allegations of misrepresentations. Mr. Cohen, plaintiffs' counsel, represents as an officer of this court that these statements were made during conference calls that included plaintiffs, defendants, and HSI. Mr. Gange, defendants' counsel, was not involved in the case at the time that HSI was proposed and the conference call(s) took place. He does not deny that the statements that Mr. Cohen describes were made but simply responds that he investigated and found no evidence of any misrepresentations. This is a factual issue, but because neither party has requested an evidentiary hearing, the court must rely on the representations of the parties and their counsel.

and request an appointment. Some of the time they say they have private insurance and some of the time they report to use Medicaid. In this way, the test attempts to determine whether and how children with Medicaid are treated differently from those with private insurance.

HSI conducted a literature review to examine the survey methods used in similar studies and the advantages and disadvantages of those methods.[3] On March 14, 2007, HSI presented its proposal, which is to use a mail survey to ask doctors and office staff a list of eight or nine questions regarding whether Medicaid children are treated differently than children with private insurance by their office or by other doctors' offices. HSI's motion, at Ex. C.

After receiving HSI's proposal, plaintiffs retained an expert to evaluate it: Dr. Karin Verlaine Rhodes of the University of Pennsylvania. Dr. Rhodes opined that HSI's proposal violates fundamental principles of survey design and is unlikely to provide valid estimates of pediatric access to specialty care, and that an audit study would be a more appropriate tool to use. *Id*. at Ex. D. Much of plaintiffs' memoranda is devoted to comparing what they and Dr. Rhodes believe are the disadvantages of using a mail survey to the advantages of an audit study and discussing the problems they see with HSI's proposed survey.[4]

---

[3] With regard to an audit study, HSI found that the advantages were "May capture true access to services; Greater potential to illustrate perception barriers which may be encountered by patient; [and] Higher response rate," and that the disadvantages were "Offices may prolong wait time for non-urgent appointments if an actual clinical scenario is not used [and] ethical concerns." For a physician/office based mail survey, the advantages found were "Most common method; Inexpensive; Has higher response rate with follow-up; Taylor [*sic*] length of survey to improve response rates; [and] Response rates can be increased inexpensively with follow-up by email or fax." Disadvantages were "Survey may be completed by office staff instead of physician; Longer response times; Multiple attempts must be made to achieve higher response rates; Results may not reflect true access to care because patients must first go through office staff; Monetary incentive needed to increase physician participation; [and] Return postage required to increase physician participation." Plaintiffs' motion, Ex. B, at 11-12.

[4] Dr. Rhodes discusses, among other things, the problem of a low expected response rate for a mail survey and HSI's failure to include a plan to test the survey before implementing it or to control for bias in the responses. She also notes that several of the multiple-choice answers offered for the questions will not provide usable information. For example, in response to the question "For your Medicaid patients, please rate how frequently you experience difficulty obtaining consults with the following pediatric sub-specialists," HSI provided a one to five

Defendants' response is again that the appropriate methodology for the study is not a matter for the court to decide because the consent decree left that decision up to the expert in order to avoid this exact type of conflict. They argue that plaintiffs' attack on HSI's qualifications is merely a veiled attack on the methodology that HSI chose, and that plaintiffs are improperly attempting to unilaterally change the terms of the consent decree and impose their will (an audit study) on everyone involved. Defendants contend that "HFS met the requirements placed on it by the Consent Decree by (1) commissioning HSI to perform the specialist study prior to May 16, 2006, and (2) obtaining the approval of HSI from plaintiff's counsel. There is nothing else required of HFS under paragraph 25 of the Consent Decree and, by meeting these two conditions, HFS can not be said to have violated the Consent Decree in any manner." Defendants' response, at 6. Defendants note that HSI found that an audit study presents ethical concerns. They do not address the merits of choosing a mail survey over an audit survey in their response brief. At oral argument on this motion, counsel for the defendants said that he did not know which method would produce the best results.

The consent decree does not leave the matter of qualification of the expert completely to the agreement of the parties. The key sentence is the following: "HFS, in consultation with plaintiffs, will retain a qualified contracting expert for this role, subject to plaintiffs' reasonable approval of the expert." The use of the words "subject to" in this sentence does not relieve the defendants of their obligation to propose a "qualified" expert. Furthermore, if the defendants procured plaintiffs' approval using false representations regarding HSI's qualifications, that

---

scale of never, rarely, sometimes, often, and always. Plaintiffs and Dr. Rhodes contend that this scale is not precise enough to yield the necessary data for the study to be useful.

approval would not be "reasonable" and would not be effective.[5] Therefore, in order to enforce the decree, as the court is required to do, it must address the merits of the parties' arguments regarding HSI's qualifications.

In this case, all of the evidence before the court weighs against finding HSI to be a qualified expert. First, it is uncontested that HSI (or at least the HSI personnel working on this case) has never conducted a mail survey or an audit survey before, which must weigh strongly against finding HSI to be an expert in conducting such studies. Second, the proposal that HSI made for the study in this case is relevant evidence of its expertise. Here, HSI's own documents do not support the choice it made to use a mail survey. The only advantages of using a mail survey that HSI found were that it is a common and inexpensive method. While the question of which method is "best" is a subjective one, the fact that one option is "common and inexpensive" cannot be a sufficient basis for selecting it where there is no evidence that it would produce data that would serve the purpose of measuring whether the plaintiff class is receiving the care required by law.

Additionally, the court has reviewed Dr. Rhodes's opinion regarding HSI's proposal and finds several of her points regarding its weaknesses to be persuasive, especially the lack of a control for bias and the lack of justification for the questions asked and the responses offered. Furthermore, the defendants' silence regarding the process of how they retained HSI is cause for concern, especially when it is uncontested that HSI's only other business at the time was a multi-million dollar contract with the State. For all of these reasons, the court finds that the defendants

---

[5] Because the court finds below that HSI is not qualified, it is not necessary to decide whether false statements were made regarding HSI's qualifications and whether plaintiffs relied on them. As an alternative basis for its order, however, the court notes that if it had been necessary to decide this issue, the court would have relied on the credible representations of Mr. Cohen, which the defendants did not dispute.

have violated the consent decree by retaining an expert that is not qualified to conduct the study called for by the consent decree.

Although it is not necessary to address plaintiffs' argument that Infosurv has effectively replaced HSI as the expert for the study, this is a strong alternative basis for the court's holding that defendants have violated the decree. The defendants hired Infosurv as a "subcontractor" to HSI. This partnership submitted a revised proposal for the study on August 21, 2007, under which a similar mail survey to the one proposed by HSI would still be used. Plaintiffs have charted the division of responsibilities between HSI and Infosurv.[6] Defendants do not contest the accuracy of the chart but simply argue that there is "no evidence" that Infosurv has replaced HSI. Defendants' response, at 11. It is clear from the chart that Infosurv has taken over all of the substantive responsibilities for conducting the study, effectively making it the expert. That reality violates the consent decree because plaintiffs were not given an opportunity to approve of Infosurv. Plaintiffs did not bargain for the right to approve the entity that would, for example, "leverage" its positive relationships and serve as a middleman between the defendant and the

---

[6]

| HSI | Infosurv |
|---|---|
| - Coordinate the work of both companies as each carries out its responsibilities<br>- Ensure adherence to project schedules and submit deliverable to HFS<br>- Serve as the health care industry and study population and sample clinical expert<br>- Serve as HFS's point of contact, and coordinate communications among all stakeholders<br>- Leverage its health care industry and research expertise in identifying the study population & sample<br>- Leverage its positive relationships with the Illinois provider community to bolster response rates | - Provide the final recommendations for the study sample and groups and the study methodology<br>- Design and finalize the survey questionnaires<br>- Pre-test the survey questionnaires<br>- Administer the surveys and gather the responses<br>- Manage the response data<br>- Mine the response data and compile the results<br>- Conduct a statistical analysis of the findings<br>- Prepare a final report of findings |

real expert. Therefore, the defendants' substitution of HSI by Infosurv violates the consent decree.[7]

The matter of an appropriate remedy for the violations remains. The parties shall work together towards selecting a qualified expert within 30 days of this ruling. With regard to whether the court should order that an audit study be completed instead of a mail study, however, the court lacks adequate information to make that judgment. Although defendants have not shown that a mail study is appropriate in this case and plaintiffs have demonstrated that the specific mail survey proposed by HSI is insufficient, the court cannot conclude that any type of mail survey would be inappropriate. Plaintiffs' arguments in favor of an audit study are very persuasive,[8] however, so an audit study should certainly be considered. Finally, because this study is merely a first step in ensuring that children receive necessary medical treatment, and because it does not appear that significant progress has been made in achieving that goal since 2004, the parties are directed to work together in good faith to complete the study without delay.

## **ORDER**

For the foregoing reasons, the court finds that the defendants have violated the consent decree by failing to select a qualified expert and by substituting an expert for the unqualified expert without obtaining reasonable approval from the plaintiff class. Plaintiffs' motion to enforce the consent decree [# 440] is granted. The parties are ordered to jointly choose a new expert within 30 days of this ruling and to expeditiously comply with all other relevant

---

[7] The court declines to address plaintiffs' third argument, that defendants have caused undue delay in the completion of the study, because it is not necessary to do so and because the cause for the delay is not clear.

[8] The political or ethical concerns with an audit study suggested by the defendants were effectively refuted by the plaintiffs.

requirements of the consent decree.  This case will be called for a status hearing on January 15, 2008 at 9:30.


DATED: November 29, 2007 ENTER: _____
Joan Humphrey Lefkow
United States District Judge